No. _____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

———————————

In re Commercial Real Estate Exchange, Inc.
*Petitioner*,

———————————

United States District Court for the
Central District of California
*Respondent*,

CoStar Group, Inc. and CoStar Realty Information, Inc.
*Real Parties in Interest.*

———————————

On Petition for Writ of Mandamus to the
United States District Court for the Central District of California
No. 2:20-cv-08819-CBM | Honorable Consuelo B. Marshall

———————————

**PETITION FOR A WRIT OF MANDAMUS**

Michael Lifrak
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, California 90017
213-443-3000
michaellifrak@quinnemanuel.com

Alex Spiro
Ellyde R. Thompson
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
212-849-7000
alexspiro@quinnemanuel.com
ellydethompson@quinnemanuel.com

*Counsel for Petitioner Commercial Real Estate Exchange, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iv

INTRODUCTION ..........................................................................................1

RELIEF SOUGHT ..........................................................................................4

ISSUES PRESENTED........................................................................................4

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..............................5

    A.    The District Court Action....................................................................5

    B.    CREXi's Engagement Of Quinn Emanuel..........................................6

    C.    The *Kutagula* Action And Ethical Wall............................................6

    D.    Plaintiffs' Motion To Disqualify........................................................9

    E.    The District Court's Order ................................................................10

LEGAL STANDARD.......................................................................................12

REASONS THE WRIT SHOULD ISSUE........................................................13

I.    THE COURT SHOULD CLARIFY THAT VICARIOUS DISQUALIFICATION IN UNRELATED MATTERS MUST BE ASSESSED ON A CASE-BY-CASE BASIS................................................13

    A.    The District Court Committed Clear Legal Error In Applying A Per Se Vicarious Disqualification Rule..............................................13

    B.    The Applicable Standard For Assessing Vicarious Disqualification Is An Important Issue That Otherwise Would Evade Review ......................................................................................20

II.    THE COURT SHOULD CORRECT THE IMPROPER DISQUALIFICATION OF THE FIRM AS TO A NON-CLIENT ..............26

CONCLUSION...............................................................................................29

CERTIFICATE OF COMPLIANCE................................................................31

CERTIFICATE OF SERVICE ................................................................................32

STATEMENT OF RELATED CASES..................................................................33

iii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acacia Pat. Acquisition, LLC v. Superior Ct.*,
234 Cal. App. 4th 1091 (2015) ......................................................................28

*Bauman v. U.S. District Court*,
557 F.2d 650 (9th Cir. 1977) .....................................................................11, 12

*Christensen v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
844 F.2d 694 (9th Cir. 1988) ................................................................23, 24, 25

*Christian v. Betak*,
2025 WL 790277 (N.D. Cal. Mar. 11, 2025) ......................................................20

*City & Cnty. of San Francisco v. Cobra Sols., Inc.*,
38 Cal. 4th 839 (2006) ..............................................................................16, 23

*In re City of San Diego*,
291 F. App'x 798 (9th Cir. 2008) ....................................................................12

*In re Cnty. of Los Angeles*,
223 F.3d 990 (9th Cir. 2000) ......................................................3, 13, 16, 22, 23

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ..........................................................................24

*Cole v. U.S. Dist. Ct. for Dist. of Idaho*,
366 F.3d 813 (9th Cir. 2004) .................................................................11, 12, 24

*Concat LP v. Unilever, PLC*,
350 F. Supp. 2d 796 (N.D. Cal. 2004).............................................................21

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
141 F.4th 1075 (9th Cir. 2025), *reh'g en banc denied*, 150 F.4th 1056
(9th Cir. 2025)..............................................................................................5

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
146 S. Ct. 1836 (2026)..................................................................................6

*Cox v. Gritman Med. Ctr.*,
170 F.4th 724 (9th Cir. 2026) ........................................................................22

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*,
20 Cal. 4th 1135 (1999) ......................................................................11, 15, 23

*Elliott v. Elliott*,
2021 WL 5360091 (E.D. Cal. Nov. 17, 2021)..................................................20

*Flatt v. Superior Ct.*,
9 Cal. 4th 275 (1994) ...........................................................2, 14, 15, 20, 21, 28

*Garcia-Aguilar v. U.S. Dist. Ct. for S. Dist. of Cal.*,
535 F.3d 1021 (9th Cir. 2008) ........................................................................21

*Garcia-Mijangos v. Voya & Reliastar Life Ins.*,
2020 WL 7000186 (C.D. Cal. Nov. 12, 2020) .................................................26

*Kahre v. U.S. Dist. Ct. for Dist. of Nevada*,
289 F. App'x 169 (9th Cir. 2008) ...................................................................25

*Kennecott Corp. v. U.S. Dist. Ct. for S. Dist. of Cal.*,
873 F.2d 1292 (9th Cir. 1989) ........................................................................11

*Kirk v. First Am. Title Ins. Co.*,
183 Cal. App. 4th 776 (2010), ...............................................3, 14, 17, 18, 22, 23

*Koo v. Rubio's Restaurants, Inc.*,
109 Cal. App. 4th 719 (2003) .........................................................................27

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
105 F. Supp. 3d 1100 (E.D. Cal. 2015) ...........................................................20

*Lewis C. Nelson & Sons, Inc. v. U.S. Dist. Ct. for E. Dist. of Cal.*,
188 F. App'x 640 (9th Cir. 2006) ..............................................................25, 29

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
957 F.3d 943 (9th Cir. 2020) ..........................................................................26

*Motion Point Corp. v. McDermott, Will & Emery LLP*,
2015 WL 4722326 (Cal. Super. Ct. July 09, 2015) .......................................9, 18

*Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*,
  760 F.2d 1045 (9th Cir. 1985) ...............................................................................29

*In re Orr*,
  178 F.4th 525 (9th Cir. 2026) ...............................................................................12

*Pontic Techs., LLC v. Tsircou*,
  2026 WL 1455145 (C.D. Cal. Apr. 15, 2026) ......................................................20

*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Tech., Inc.*,
  69 Cal. App. 4th 1399 (1999) ...............................................................................27

*Union Pac. R.R. Co. v. Hill*,
  2023 WL 7440302 (N.D. Cal. Nov. 8, 2023) ...............................................14, 17

*Visa U.S.A., Inc. v. First Data Corp.*,
  241 F. Supp. 2d 1100 (N.D. Cal. 2003) ...............................................................21

*Western Sugar Coop. v. Archer-Daniels-Midland Co.*,
  98 F. Supp. 3d 1074 (C.D. Cal. 2015) .....................................................10, 20, 21

*White v. Kroger Co.*,
  2023 WL 2949160 (N.D. Cal. Apr. 13, 2023)......................................................20

*In re Zermeno-Gomez*,
  868 F.3d 1048 (9th Cir. 2017) ..............................................................................21

## Statutes

28 U.S.C. § 1291 ....................................................................................................11

28 U.S.C. § 1292 ....................................................................................................11

## Other Authorities

Cal. R. Prof. Cond. 1.7(a) ...............................................................................11, 28

Cal. R. Prof. Cond. 1.10.................................................................................19, 28

Cal. R. Prof. Conduct 1.10, Cmt. 6................................................................18, 19

Commission Report and Provisional Recommendation: R. 1.10, (Feb. 18,
  2017) .....................................................................................................................19

## INTRODUCTION

This Court should issue a writ of mandamus vacating the order of the district court (Marshall, J.) automatically disqualifying an entire law firm based upon an asserted conflict arising from two wholly unrelated matters for which a timely screen was implemented. The California Supreme Court has never adopted such an automatic vicarious disqualification rule, and relevant California authority envisions a case-by-case assessment as to whether client confidences are at risk. Automatic vicarious disqualification under the circumstances here—in which the parties seeking disqualification did not assert *any* risk to client confidences—does not comport with California law. Nor does California law support the district court's disqualification of counsel—based upon an alleged breach of the duty of loyalty— as to a party the disqualified law firm never represented. Mandamus should be granted to ensure that Defendant Commercial Real Estate Exchange, Inc. ("CREXi") is not wrongly deprived of its chosen counsel at trial.

This petition arises from a motion to disqualify Quinn Emanuel Urquhart & Sullivan, LLP from representing CREXi adverse to two plaintiffs: CoStar Group, Inc. and CoStar Realty Information, Inc. (together, "Plaintiffs"). Plaintiffs argued that the entire firm of Quinn Emanuel should be disqualified based upon a breach of the duty of loyalty because a separate set of Quinn Emanuel attorneys represented CoStar Group in an unrelated litigation involving an employee of a company that

1

CoStar Group acquired after the events giving rise to that litigation. Plaintiffs did not argue that any client confidential information was at risk. Nor did Plaintiffs offer any legal argument as to why Quinn Emanuel should be disqualified as to the other plaintiff, CoStar Realty—a company that Quinn Emanuel never represented and with which it never had an attorney-client relationship. Yet the district court disqualified the entire firm—not just the attorneys involved in the unrelated matter in which CoStar Group was named as a defendant—as to both Plaintiffs, citing a "per se" or "automatic" rule.

This petition thus presents a fundamental question as to whether California law requires the automatic disqualification of an entire law firm with thousands of lawyers across the globe based upon a breach of the duty of loyalty in a wholly unrelated matter. California courts in this Circuit have been relying for years on dicta in the California Supreme Court's decision in *Flatt v. Superior Ct.*, 9 Cal. 4th 275 (1994), but even that dicta states that, when a "*substantial relationship*" exists between representations, "disqualification extends vicariously to the entire firm." *Id.* at 283 (emphasis added). As a California appellate court has since stated, "the state of the law" requires "(1) a case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case; (2) tempered by the . . . rule that vicarious disqualification should be automatic in cases of a tainted attorney *possessing actual confidential information* from a representation, who *switches sides*

2

*in the same case.*" *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 800 (2010), *as modified* (May 6, 2010) (emphases added). In the circumstances present here, the two matters were not even remotely related and a timely screen was implemented. Plaintiffs did not assert that any client confidences for either entity were at risk and, indeed, could not have made such an argument because the conduct at issue in the unrelated litigation occurred before CoStar Group acquired the defendant company.

The California Supreme Court has not adopted an automatic vicarious disqualification rule in cases where two matters are not substantially related and an ethical wall was promptly implemented. Rather, the case law indicates the California Supreme Court—like the appellate court in *Kirk*—would adopt a more flexible, case-by-case approach that assesses the relationship between the two representations and the efforts undertaken by the firm to shield a client's confidential information. In fact, this Court has read the same California Supreme Court precedent cited by the district court to support its automatic disqualification order "as sending a signal that the California Supreme Court may well adopt a more flexible approach to vicarious disqualification." *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

Separately, as to CoStar Realty, the district court did not address—or point to any authority that would permit—disqualification of the firm as to Plaintiff CoStar

3

Realty.  On this point, Plaintiffs' only argument was that the two entities have been "together defined as CoStar" throughout the litigation.  2-ER-26 at 16:7–14.  The district court's ruling threatens to vastly expand the reach of disqualification motions beyond the clients to whom duties are owed.

Review by this Court would resolve these important questions and give district courts critical guidance as to how vicarious disqualification should be assessed.  The Court should issue a writ of mandamus.

## RELIEF SOUGHT

CREXi respectfully requests a writ of mandamus vacating the district court's Order re: Plaintiffs' Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP (the "Order").  1-ER-2.

## ISSUES PRESENTED

1.      Whether the district court committed a clear legal error when it applied an automatic rule of vicarious disqualification that the California Supreme Court has not adopted and is unlikely to adopt in disqualifying an entire law firm based upon an asserted breach of the duty of loyalty concerning wholly unrelated representations.

2.      Whether the district court abused its discretion when it disqualified Quinn Emanuel from representing CREXi adverse to CoStar Realty when no conflict—imputed or otherwise—existed with respect to CoStar Realty.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     The District Court Action

On September 25, 2020, CoStar Group, Inc. and CoStar Realty Information, Inc. sued CREXi in the Central District of California asserting copyright infringement and Digital Millennium Copyright Act claims, among other claims. *CoStar Group, Inc. et al. v. Commercial Real Estate Exchange, Inc.*, No. 2:20-cv-08819-CBM-AS, Dkt. 1 (C.D. Cal. Sept. 25, 2020) (hereinafter "District Court Dkt."). CREXi in turn brought counterclaims for Plaintiffs' unlawful monopolization and other anticompetitive conduct under the Sherman Act and California state law, along with claims for trademark infringement and related unfair competition. District Court Dkt. 162. On February 23, 2023, the district court granted Plaintiffs' motion to dismiss CREXi's antitrust counterclaims but permitted CREXi's trademark infringement and related counterclaim to proceed. District Court Dkt. 198, 340. At this stage, the parties have proceeded through fact and expert discovery on their respective claims, summary judgment, motions in limine, and *Daubert* motions.

Meanwhile, in July 2023, the district court granted CREXi's motion for entry of partial judgment on its dismissed antitrust counterclaims, District Court Dkt. 461, and CREXi appealed, District Court Dkt. 466. This Court reversed the district court's dismissal of CREXi's antitrust counterclaims in a published decision.

5

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 141 F.4th 1075 (9th Cir. 2025), *reh'g en banc denied*, 150 F.4th 1056 (9th Cir. 2025).

### B.    CREXi's Engagement Of Quinn Emanuel

With a trial inevitable and CREXi's antitrust claims revived, CREXi sought to hire a law firm with both experienced jury trial specialists and plaintiff-side antitrust specialists.  CREXi accordingly retained renowned jury trial lawyer Alex Spiro and his law firm, Quinn Emanuel, on September 16, 2025.  2-ER-112, ¶ 5. Quinn Emanuel filed a request, later granted by the district court, to appear as substitute counsel for CREXi on December 3, 2025.  2-ER-299; *see also* 2-ER-296– 97.  The next day, Plaintiffs filed a petition for a writ of certiorari at the United States Supreme Court seeking further review of this Court's decision reinstating CREXi's antitrust counterclaims.  After the Supreme Court requested that CREXi submit a response, Quinn Emanuel successfully opposed Plaintiffs' petition, which the Supreme Court denied on March 3, 2026.  *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 146 S. Ct. 1836 (2026).

### C.    The *Kutagula* Action And Ethical Wall

On September 18, 2025, two days after CREXi engaged Quinn Emanuel, Quinn Emanuel implemented an ethical wall between the CREXi litigation team and an entirely different team of Quinn Emanuel attorneys working on a separate litigation captioned *Kutagula v. Matterport, Inc., et al.*, 25-cv-05383-NC (N.D.

Cal.). 2-ER-116, ¶ 5. The wall forbade members of the *Kutagula* team from sharing confidential information with members of the CREXi team and vice versa. *Id*. There was no overlap between the personnel working on the CREXi and *Kutagula* matters. 2-ER-121, ¶ 11.

The since-dismissed *Kutagula* litigation involved entirely different facts bearing no relationship to any of the issues in the CREXi matter. Specifically, in July 2024, Quinn Emanuel was retained to represent Matterport Inc. "in connection with defense of employment-related legal claims filed by former executive Vinatha Kutagula." 2-ER-271. Matterport's Chief Legal Officer signed the Quinn Emanuel engagement letter, which contained a clear and explicit advance waiver of future conflicts. 2-ER-274–75. In the summer of 2024, Kutagula sued Matterport Inc. in California Superior Court. *Kutagula v. Matterport Inc. et al.*, No. 24CV444492, Dkt. 1 (Cal. Super. Ct. Aug. 2, 2024).

Months later, on February 28, 2025, CoStar Group acquired Matterport Inc., which merged with a CoStar Group subsidiary and then ceased to exist as an entity. 2-ER-246, n.1. After the merger, CoStar Group "assumed responsibility for managing Matterport's litigation with Ms. Kutagula," the legal departments of CoStar Group and Matterport merged, and CoStar Group began paying Quinn Emanuel under the Matterport engagement letter. 2-ER-218, ¶ 3. CoStar Group

never sought to sign a new engagement letter with Quinn Emanuel, nor did it ever do so.

After the state court compelled arbitration, Kutagula sued Matterport Inc.—which by that time had ceased to exist—and CoStar Group in the Northern District of California in June 2025. *Kutagula v. Matterport, Inc., et al.*, 25-cv-05383-NC, Dkt. 1 (N.D. Cal. June 26, 2025). Kutagula alleged that she was wrongfully fired by Matterport for reporting Matterport's alleged illegal conduct and was the target of racial discrimination. *Id.*, Dkt. 24, Am. Compl. ¶¶ 4, 12–14, 52–56, 71. All of the illegal conduct Kutagula alleged occurred before CoStar Group acquired Matterport. *See id.* ¶ 6.

On August 15, 2025, a group of Quinn Emanuel attorneys not involved in the CREXi district court proceedings appeared in *Kutagula* on behalf of Matterport Inc. and CoStar Group and moved to dismiss Kutagula's amended complaint. *Id.*, Dkts. 8, 12, 13, 26. Following briefing, the *Kutagula* court dismissed with prejudice all claims against CoStar Group, holding that "CoStar acquired Matterport a year after Plaintiff's termination," and that Kutagula had "not alleged 'she was employed by CoStar or that CoStar took employment actions against her.'" 2-ER-41. The court compelled the claims against Matterport Inc. to arbitration. 2-ER-39.

8

### D. Plaintiffs' Motion To Disqualify

On January 13, 2026, CoStar Group and CoStar Realty moved to disqualify Quinn Emanuel. *See* 2-ER-237. According to Plaintiffs, Quinn Emanuel breached its duty of loyalty because, at the time Quinn Emanuel sought to represent CREXi against CoStar Group, Quinn Emanuel was representing CoStar Group—but not CoStar Realty Information—in *Kutagula*. Even though the *Kutagula* and CREXi litigations share no common facts, Plaintiffs argued California's supposed "per se" or "automatic" disqualification rule required disqualification of the entire Quinn Emanuel firm based upon the concurrent representation of CoStar Group in *Kutagula*. 2-ER-252.

In opposition, CREXi made two principal arguments relevant to this petition. *First*, CREXi argued that California law does not mandate the automatic vicarious disqualification of an entire firm when a disqualification motion is based on an unrelated case in which no access to confidential information could have been gained. Plaintiffs' contrary argument was based on a misreading of California Supreme Court precedent that has never squarely addressed whether vicarious disqualification is absolute. More recent California decisions cast even further doubt on any supposed "automatic" disqualification rule and reflect a "practical paradigm shift: essentially, in the situation of concurrent clients, the individual attorney may be subject to disqualification pursuant to the duty of loyalty, but the standard for

9

whether the entire law firm is vicariously disqualified is viewed in the context of the duty of confidentiality." *Motion Point Corp. v. McDermott, Will & Emery LLP*, 2015 WL 4722326, at *8 (Cal. Super. Ct. July 09, 2015).

*Second*, CREXi argued that CoStar Group had strategically invoked corporate separateness only when favorable to its position. Specifically, CoStar Group disclaimed the Matterport-Quinn Emanuel engagement letter and its advance waiver because the letter supposedly bound only Matterport, not CoStar Group. Yet at the same time, CoStar Group sought disqualification on behalf of its wholly owned subsidiary CoStar Realty when only CoStar Group was sued in *Kutagula*. Plaintiffs never explained what conflict possibly existed with respect to CoStar Realty—an entity that was not a party in *Kutagula* and that Quinn Emanuel did not represent.

CREXi reiterated these points at the June 24, 2026 hearing on Plaintiffs' motion. 2-ER-19–20, 9:13–10:18.

### E. The District Court's Order

On July 13, 2026, the district court issued its Order granting Plaintiffs' motion to disqualify. 1-ER-9.

The district court reasoned that, "[w]hen evaluating whether a law firm may concurrently represent two clients, even on unrelated matters, it is presumed that the duty of loyalty has been breached and counsel is automatically disqualified, unless full reasonable disclosure is made and both clients knowingly agree in writing to

waive the conflict." 1-ER-7 (quoting *Western Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1082 (C.D. Cal. 2015) (Marshall, J.)). The district court concluded that "CoStar" had not provided informed consent to the advance waiver in the Matterport-Quinn Emanuel engagement letter, noting that "[c]ourts in other districts have declined to enforce advance waivers against affiliates on the basis that the affiliate did not provide informed consent." 1-ER-8. And the district court specifically relied upon the fact that other "courts in the Ninth Circuit have disqualified law firms in concurrent representation cases despite the presence of an ethics wall," citing three decisions from other California district courts. 1-ER-8–9.

In sum, the district court held: "Because CoStar did not provide informed consent of Quinn's concurrent representation, the Court finds that the duty of loyalty has been breached and Quinn is disqualified from representing CREXi in the instant action." 1-ER-9 (citing *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1147 (1999); Cal. R. Prof. Cond. 1.7(a), 1.10(a)). The district court did not address California case law and commentary to the California professional conduct rules suggesting a case-by-case approach to vicarious disqualification for unrelated matters or the argument that Quinn Emanuel could not be disqualified as to CoStar Realty.

11

## LEGAL STANDARD

"The rule is that a writ of mandamus may be used to review the disqualification of counsel." *Cole v. U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813, 816 (9th Cir. 2004); *see also, e.g.*, *Kennecott Corp. v. U.S. Dist. Ct. for S. Dist. of Cal.*, 873 F.2d 1292, 1292 (9th Cir. 1989) ("The Ninth Circuit has held that a denial of a motion to disqualify counsel is not appealable under either 28 U.S.C. § 1291 or 28 U.S.C. § 1292(b); instead it treats such an appeal as a petition for mandamus").

To determine whether mandamus is appropriate, the Court weighs five factors drawn from *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977):

> (1) the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression.

*In re City of San Diego*, 291 F. App'x 798, 799 (9th Cir. 2008) (quoting *Bauman*, 557 F.2d at 654–55); *see also, e.g.*, *In re Orr*, 178 F.4th 525, 531–32 (9th Cir. 2026) (applying the *Bauman* factors). "The *Bauman* factors should not be mechanically applied." *Cole*, 366 F.3d at 817 (citation omitted). "Evidence showing that all the *Bauman* factors are affirmatively presented by a case does not necessarily mandate the issuance of a writ, nor does a showing of less than all, indeed of only one,

12

necessarily mandate denial; instead, the decision whether to issue the writ is within the discretion of the court." *Id*.

## REASONS THE WRIT SHOULD ISSUE

I. **THE COURT SHOULD CLARIFY THAT VICARIOUS DISQUALIFICATION IN UNRELATED MATTERS MUST BE ASSESSED ON A CASE-BY-CASE BASIS**

This Court should grant mandamus relief because the district court—like other courts in this Circuit—erroneously applied an automatic vicarious disqualification rule to unrelated representations. The California Supreme Court has never endorsed such a rule and, to the contrary, California courts suggest that vicarious disqualification must be assessed on a case-by-case basis. This petition presents the opportunity for this Court to weigh in on the inconsistent application of California law.

A. **The District Court Committed Clear Legal Error In Applying A Per Se Vicarious Disqualification Rule**

At the threshold, the district court clearly erred by applying an automatic vicarious disqualification rule without evaluating the nature of the two matters or the circumstances surrounding Quinn Emanuel's representation. 1-ER-9.

State law governs motions to disqualify. *See, e.g.*, *In re Cnty. of Los Angeles*, 223 F.3d at 995 ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue."). Modern California case law indicates that firm-wide

13

disqualification is not "automatic" where matters are not substantially related, and the California Supreme Court has not adopted such a bright-line, "per se" rule, even in cases involving an alleged breach of the duty of loyalty. To the contrary, the two seminal California Supreme Court cases that discuss vicarious disqualification—*Flatt* and *SpeeDee Oil*—do not come close to endorsing the automatic disqualification rule the district court applied here, and later cases suggest that no such rule would apply.

In *Flatt*, the California Supreme Court granted review in a legal malpractice action to consider the scope of an attorney's duty to a new client once the attorney learned that the representation would conflict with the attorney's duty of loyalty to an existing client. 9 Cal. 4th at 278. Noting that its "holding is narrow," the court held that "the requirement of undivided loyalty to the first client negates any duty on the part of the attorney to" assist the second client. *Id*. at 278–79.

The issues in *Flatt* therefore were limited, and the California Supreme Court did not address directly any supposed rule of automatic, firm-wide disqualification. In its background discussion of California's conflicts case law, the Supreme Court remarked that when a "*substantial relationship*" exists between prior and current representations, disqualification follows and, "indeed, the disqualification extends vicariously to the entire firm." *Id*. at 283 (emphasis added). Not only have courts characterized that statement in *Flatt* as dicta, *see, e.g.*, *Union Pac. R.R. Co. v. Hill*,

14

2023 WL 7440302, at \*11 (N.D. Cal. Nov. 8, 2023) (explaining "*Flatt*'s statement that automatic disqualification extends to the entire firm is dicta"); *Kirk*, 183 Cal. App. 4th at 797 ("The *Flatt* case, however, was not concerned with whether a tainted attorney's law firm was subject to vicarious disqualification."), but that statement specifically concerns a conflict arising from two cases that have a "substantial relationship." Plaintiffs here never argued (nor could they), and the district court never found (nor could it), that any "substantial relationship" existed between the *Kutagula* wrongful termination case and this one.

*SpeeDee Oil*, on which the district court relied (1-ER-9), likewise did not establish a "mandatory" vicarious disqualification rule. There, franchisees of SpeeDee Oil hired a law firm as counsel of record in an action against Mobil Oil. 20 Cal. 4th at 1139. Meanwhile, Mobil had consulted and shared confidential information *about the same litigation* with an attorney who was "of counsel" to that *same law firm*. *Id*. Thus, because the tainted lawyer and other lawyers at the law firm represented adversaries "*in the same litigation*," the California Supreme Court held that the "conflict of interest must inevitably lead to the . . . firm's vicarious disqualification from representing respondents to assure the preservation of Mobil's confidences and the integrity of the judicial process." *Id*. at 1156 (emphasis added). Thus, the California Supreme Court did not address vicarious disqualification in unrelated matters where no risk of breaching client confidences exists.

15

While the *SpeeDee Oil* court—citing *Flatt*—stated that "[w]hen a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm," *id*. at 1139 (citing *Flatt*, 9 Cal. 4th at 283), that statement did not go beyond the facts of that case, which involved "[t]he most egregious conflict of interest," namely the "representation of clients whose interests are directly adverse *in the same litigation*," *id*. at 1147 (citing *Flatt*, 9 Cal. 4th at 284 n.3) (emphasis added). The California Supreme Court nevertheless specified that it "need not consider whether an attorney can *rebut a presumption of shared confidences, and avoid disqualification*, by establishing that the firm imposed effective screening procedures," because, unlike here, the evidence "fail[ed] to demonstrate that any formal screening procedure" was implemented. *Id*. at 1151–52 (emphasis added). Although the California Supreme Court ultimately left that question unanswered, this Court has since "read *Speedee Oil* as sending a signal that the California Supreme Court may well adopt a more flexible approach to vicarious disqualification." *In re Cnty. of Los Angeles*, 223 F.3d at 995.

In a later decision, the California Supreme Court divided over whether vicarious disqualification was required in even the most egregious circumstances. In *City & Cnty. of San Francisco v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 843 (2006), a majority of the California Supreme Court affirmed disqualification of a city attorney and his office and rejected ethical screening as a remedy. But the Court

16

reached that conclusion because the matters were substantially related and because of the attorney's unique status as a public official and head of the city attorney's office. *Id*. at 853–54. Even then, the unique facts underlying that narrow ruling prompted a dissent that an automatic disqualification rule should not be applied vicariously even as to a highly unified city attorney's office in a lawsuit *substantially related* to the city attorney's work in private practice. *Id*. at 854–55 (Corrigan, J., dissenting) (citing *In re Cnty. of Los Angeles*, 223 F.3d at 996) (noting that "[a]n ethical wall, when implemented in a timely and effective way, can rebut the presumption that a lawyer has contaminated the entire firm" and that "[t]he changing realities of law practice call for a more functional approach to disqualification" (cleaned up)).

Thus, the California Supreme Court repeatedly has suggested that vicarious disqualification can be avoided by proper ethical screening, such that "the presumption of shared confidences among attorneys at a law firm can be rebutted." *Union Pac. R.R. Co.*, 2023 WL 7440302, at *11. And more recent decisions have concluded that "neither *Flatt* nor *SpeeDee Oil* addressed the issue of whether vicarious disqualification is absolute, and the state of the law is that as initially expressed by the appellate courts: (1) a case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case; (2) tempered by the . . . rule that vicarious disqualification should be automatic in cases of a tainted

17

attorney *possessing actual confidential information* from a representation, who *switches sides in the same case*." *Kirk*, 183 Cal. App. 4th at 800 (emphases added). As such, courts have recognized that any "general rule" of vicarious disqualification "is a rebuttable one, which can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case." *Id*.; *see also, e.g.*, *Union Pac. R.R. Co.*, 2023 WL 7440302, at *11 (agreeing vicarious disqualification is rebuttable).

That is true even in the case of concurrent representations, and decisions like *Kirk* that post-date *Flatt* and *SpeeDee Oil* reflect a "practical paradigm shift: essentially, in the situation of concurrent clients, the individual attorney may be subject to disqualification pursuant to the duty of loyalty, but the standard for whether the entire law firm is vicariously disqualified is viewed in the context of the duty of confidentiality." *Motion Point*, 2015 WL 4722326, at *8.

That is the rule that applies here, but the district court failed to apply it. Instead of addressing CREXi's arguments, *see* 2-ER-92–96, the district court defaulted to an improper automatic vicarious disqualification rule. Had the district court applied the standard set forth in California appellate authority to the facts of this case, it would have had to conclude that vicarious disqualification was not warranted. It was undisputed that the instant matter bears no relation—never mind a substantial relation—to the *Kutagula* matter. Plaintiffs did not argue otherwise. It

18

is likewise undisputed that no client confidences were at risk because the conduct at issue in the *Kutagula* litigation pre-dated CoStar Group's acquisition of Matterport. Again, Plaintiffs did not argue otherwise. And, finally, Quinn Emanuel established that it implemented an ethical wall within 48 hours of its retention by CREXi in this matter. 2-ER-116, ¶ 5. Under the "case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case," *Kirk*, 183 Cal. App. 4th at 800, vicarious disqualification was improper. *See also* California Rule 1.10, cmt. 6 (recognizing, in comments to rule governing imputation of conflict, that disqualification is subject to case law and specifically citing *Kirk*).[1]

The district court clearly erred when it applied an automatic rule of vicarious disqualification in two unrelated matters to the entire Quinn Emanuel firm and its 1,300 attorneys in more than thirty offices worldwide. 2-ER-116, ¶ 3. No California

---

[1] Comment 6 to Rule 1.10 expressly states: "Standards for disqualification, and whether in a particular matter (1) a lawyer's conflict will be imputed to other lawyers in the same firm, or (2) the use of a timely screen is effective to avoid that imputation, *are also the subject of statutes and case law*." Cal. R. Prof. Conduct 1.10, Cmt. 6, https://www.calbar.ca.gov/sites/default/files/portals/0/documents/rules/Rules-of-Professional-Conduct.pdf (emphasis added; asterisks omitted). The California Commission drafting the Rule furthermore specifically proposed for Rule 1.10 to use the words "prohibited" and "prohibition" rather than "disqualified" and "disqualification" to "*accurately reflect[] that the rule is a disciplinary rule rather than a civil standard for disqualification*." Comm'n Rep. & Recommendation: Rule 1.10 (Feb. 17, 2017), https://www.calbar.ca.gov/sites/default/files/agenda/agendaitem1000016914.pdf (emphasis added).

Supreme Court decision, including *SpeeDee Oil*, on which the district court relied, has ever announced such an immutable, per se rule. As a result, CREXi lost its chosen trial counsel. That was clear error.

### B. The Applicable Standard For Assessing Vicarious Disqualification Is An Important Issue That Otherwise Would Evade Review

Whether California law automatically disqualifies an entire firm based on unrelated representations is a question this Court should review now.

*First*, the district court's order reflects an oft-repeated error: the application of an "automatic" disqualification rule that certain district courts in this Circuit wrongly presume has been adopted by the California Supreme Court.

Numerous district court decisions have applied per se disqualification based on dicta from the California Supreme Court's *Flatt* and *SpeeDee Oil* decisions, including those cases the district court cited in its Order, and held the rule applies even to unrelated matters. 1-ER-9; *e.g.*, *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1109 (E.D. Cal. 2015) ("An attorney will be automatically disqualified from simultaneously representing two clients with adverse interests without both clients' informed, written consent, even if the two matters have nothing in common." (citing *Flatt,* 9 Cal. 4th at 284)); *Elliott v. Elliott*, 2021 WL 5360091, at *3 (E.D. Cal. Nov. 17, 2021) (same, quoting *Lennar Mare Island*, 105 F. Supp. 3d at 1109); *see also, e.g.*, *Pontic Techs., LLC v. Tsircou*, 2026 WL 1455145, at *3 (C.D. Cal. Apr. 15, 2026) ("The rule is nearly absolute that

20

disqualification is mandatory.") (citing *Flatt*, 9 Cal. 4th at 284); *Christian v. Betak*, 2025 WL 790277, at \*4 (N.D. Cal. Mar. 11, 2025) (similar; relying on *Flatt*); *White v. Kroger Co.*, 2023 WL 2949160, at \*5 (N.D. Cal. Apr. 13, 2023) (similar; relying on *Flatt*).

This district court has twice applied such an automatic disqualification rule, both in this case and its prior decision, *Western Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074 (C.D. Cal. 2015). In its Order, the district court quoted its prior decision in *Western Sugar* for the proposition that "even on unrelated matters, it is presumed that the duty of loyalty has been breached and counsel is automatically disqualified." 1-ER-7. *Western Sugar*, in turn, cited for that proposition two other district court decisions that both rely on *Flatt*'s dicta to support their holdings. *See Western Sugar Coop.*, 98 F. Supp. 3d at 1082 (citing *Visa U.S.A., Inc. v. First Data Corp.,* 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) ("When evaluating whether a law firm may concurrently represent two clients, even on unrelated matters, it is presumed that the duty of loyalty has been breached and counsel is automatically disqualified." (citing *Flatt,* 9 Cal. 4th at 284–85)); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 819 (N.D. Cal. 2004) (same quote, citing *Visa*, 241 F. Supp. 2d at 1104)).

The tendency of district courts to reflexively apply automatic vicarious disqualification based on *Flatt* and a daisy chain of other district court cases that

21

have committed the same error throughout the years establishes that this is an oft-repeated error that this Court should rectify. *See, e.g.*, *In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017) (case involved an oft-repeated error where, "[w]ithout intervention, several judges within the District of Arizona may erroneously continue to believe themselves free to ignore a controlling decision of this court . . . ."); *Garcia-Aguilar v. U.S. Dist. Ct. for S. Dist. of Cal.*, 535 F.3d 1021, 1026 (9th Cir. 2008) (holding error "appears to be an 'oft-repeated error,' as three district judges committed the exact same error").

*Second*, the district court's order raises important issues of first impression in this Circuit regarding whether vicarious disqualification is necessarily automatic in the case of a concurrent representation, as several district courts have held, or whether "the state of the law is that as initially expressed by the appellate courts: (1) a case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case; (2) tempered by the . . . rule that vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case." *Kirk*, 183 Cal. App. 4th at 800.

"[N]either *Flatt* nor *SpeeDee Oil* addressed the issue of whether vicarious disqualification is absolute," *id.*, and the issue remains an open one today. "In interpreting state law, federal courts are bound by the pronouncements of the state's

highest court. If the particular issue has not been decided, federal courts must predict how the state's highest court would resolve it." *Cox v. Gritman Med. Ctr.*, 170 F.4th 724, 733 (9th Cir. 2026).

This Court has noted that the California Supreme Court "may well adopt a more flexible approach to vicarious disqualification," in recognition of the realities of modern-day law practice. *In re Cnty. of Los Angeles*, 223 F.3d at 995. Indeed, it is not realistic to think that a global law firm with dozens of offices worldwide and more than a thousand attorneys all work together or share confidences across every one of the firm's multitude of ongoing matters. *See, e.g.*, 2-ER-116, ¶ 3. In contrast, "[t]he vicarious disqualification rule," at least as described more than 25 years ago by the California Supreme Court, "recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information." *SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th at 1153–54. But "[i]n a situation where the 'everyday reality' is no longer that all attorneys in the same law firm actually 'work[ ] together,' there would seem to be no place for a rule of law based on the premise that they do." *Kirk*, 183 Cal. App. 4th at 802. Vicarious disqualification of an entire firm accordingly "can work harsh and unjust results," including here, where an entirely different team of Quinn Emanuel attorneys was disqualified from representing CREXi in a wholly unrelated matter. *Cobra Sols., Inc.*, 38 Cal. 4th at 855 (Corrigan, J., dissenting) (quoting *In re*

23

*Cnty. of Los Angeles*, 223 F.3d at 996). "The changing realities of law practice call for a more functional approach to disqualification than in the past." *Id.*

*Third*, CREXi has no adequate means to obtain relief other than a mandamus petition to this Court. "An order disqualifying counsel is not a collateral order subject to immediate appeal" and "[o]nce a new attorney is brought in, the effect of the order is irreversible." *Christensen v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 844 F.2d 694, 697 (9th Cir. 1988). Thus, as here, the first *Bauman* "factor is affirmatively presented in the context of a disqualification of counsel when the petition arises from the action of a district court." *Cole*, 366 F.3d at 817.

*Finally*, CREXi will suffer irreversible prejudice should it be deprived of its chosen trial counsel. This Court has recognized that "a lost choice of counsel cannot be adequately remedied through means other than mandamus and the resultant harm is not correctable on appeal." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 710 (9th Cir. 2009). Theoretically, CREXi could appeal the disqualification after trial on the claims and counterclaims; but CREXi could not obtain the relief sought in this mandamus petition on direct appeal because CREXi "seeks to be represented by [its] chosen counsel *at trial.*" *Christensen*, 844 F.2d at 697 (original emphasis).

The district court's order strips CREXi of its carefully selected trial counsel and forces CREXi to start its search for representation anew in a case with a

24

voluminous discovery record and more than 1,300 docket entries. Quinn Emanuel, working hand-in-hand with CREXi, has invested hundreds of hours preparing this case for trial, developing litigation strategy, mastering the factual record, planning the prosecution of CREXi's now-revived antitrust claims, drafting a brief to the Supreme Court, and building a relationship of mutual trust and confidence with CREXi, its board of directors, and its employees that effective trial advocacy requires. 2-ER-112, ¶ 6. At the same time, CREXi's small legal team has worked tirelessly to integrate the Quinn Emanuel attorneys into this matter, endeavoring to share years of information, documents, context, and strategy. *Id*. Disqualification at this stage would mean those significant efforts would all be wasted. CREXi thus establishes prejudice. *See, e.g.*, *Kahre v. U.S. Dist. Ct. for Dist. of Nevada*, 289 F. App'x 169, 171 (9th Cir. 2008) (holding without discussion that "Petitioner establishes the first two factors" after district court struck substitution of petitioner's counsel); *Lewis C. Nelson & Sons, Inc. v. U.S. Dist. Ct. for E. Dist. of Cal.*, 188 F. App'x 640, 641–42 (9th Cir. 2006) (petitioner established "the first two *Bauman* factors, because an order disqualifying counsel is not subject to immediate appeal and any damage caused by the alleged conflict would not be correctable on appeal").

The Court should grant mandamus relief to address this question and provide guidance on the propriety of automatic vicarious disqualification.

25

## II. THE COURT SHOULD CORRECT THE IMPROPER DISQUALIFICATION OF THE FIRM AS TO A NON-CLIENT

Independently, this Court should grant mandamus relief because the district court erroneously disqualified Quinn Emanuel from representing CREXi adverse to CoStar Realty—a party that never had any attorney-client relationship with Quinn Emanuel.

Plaintiffs founded their disqualification motion on the argument that "Quinn represented *CoStar* in *Kutagula* before the firm substituted as counsel in the instant case. Because *CoStar* did not consent to this conflict—let alone provide the informed written consent the law requires—California law mandates Quinn's automatic disqualification from this case." 2-ER-253 (emphases added). This argument depends on treating two separate corporate entities as one. And it ignores the undisputed fact that no Quinn Emanuel attorney has ever represented CoStar Realty in *Kutagula*. Quinn Emanuel therefore neither owed nor breached any duty of loyalty to CoStar Realty—an argument CREXi made in its opposition brief and to which Plaintiffs failed to respond. *See, e.g.*, *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to respond meaningfully in an answering brief to an appellee's argument waives any point to the contrary."); *Garcia-Mijangos v. Voya & Reliastar Life Ins.*, 2020 WL 7000186, at *3 (C.D. Cal. Nov. 12, 2020) ("The Court agrees that, absent unusual circumstances, failure to respond to an argument on the merits is 'viewed as grounds for waiver or concession

26

of the argument.'"). Instead, the only argument that Plaintiffs' counsel could muster at the district court hearing was that "this case has been litigated for, uh, six years with CoStar Realty information and CoStar Group, uh, together defined as CoStar." 2-ER-26 at 16:7–14. That throwaway statement does nothing to establish a disqualifying conflict. Defining two distinct entities as a single entity in court filings does not make it so.

The district court's disqualification of Quinn Emanuel as to CoStar Realty runs contrary to law. "Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship." *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719, 729 (2003) (citations omitted); *see also, e.g.*, *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Tech., Inc.*, 69 Cal. App. 4th 1399, 1404 (1999) ("An attorney-client relationship must have existed before disqualification is proper."). CoStar Realty did not and could not meet its burden to establish any such attorney-client relationship because it is undisputed that Quinn Emanuel never represented CoStar Realty. *See, e.g.*, *Koo*, 109 Cal. App. 4th at 729 ("The burden is on the party seeking disqualification to establish the attorney-client relationship."). The district court, however, disqualified Quinn Emanuel as to both Plaintiffs without addressing

27

this threshold problem with Plaintiffs' argument. Indeed, the district court made no findings at all with respect to CoStar Realty, including its supposed relationship to Quinn Emanuel or why a disqualifying conflict existed as to that entity.[2]

Finally, not even the California Rules of Professional Conduct—which apply standards of professional conduct rather than rules for disqualification motions—could justify disqualification as to CoStar Realty. The district court and Plaintiffs each cited Rules 1.7(a) (governing conflicts with respect to current clients) and 1.10 (governing imputation of conflicts) as purported support for across-the-board disqualification. *See* 1-ER-9, 2-ER-51, 2-ER-252, 2-ER-254. But Rule 1.7(a)— titled "Conflict of Interest: Current Clients"—expressly applies only to a lawyer's "clients," stating "[a] lawyer shall not, without informed written consent from *each client* and compliance with paragraph (d), represent a client if the representation is directly adverse *to another client* in the same or a separate matter." (emphasis added). That makes sense, considering "[t]he principle of loyalty is for the *client's* benefit"—not a non-client such as CoStar Realty. *Flatt*, 9 Cal. 4th at 285 n.4

---

[2] A conflict can arise with respect to a non-client in situations where a lawyer received the non-client's confidences in the course of representing a client and then pursues substantially related litigation against that non-client. *Acacia Pat. Acquisition, LLC v. Superior Ct.*, 234 Cal. App. 4th 1091, 1099 (2015). That theory cannot apply here. Plaintiffs never made such an argument and the *Kutagula* litigation did not involve CoStar Realty. Instead, it involved matters arising before CoStar Group's acquisition of Matterport.

(original emphasis). Rule 1.7(a) (and by extension Rule 1.10) thus does nothing to support the district court's holding as to CoStar Realty that, "[b]ecause CoStar did not provide informed consent of Quinn's concurrent representation, the Court finds that the duty of loyalty has been breached and Quinn is disqualified from representing CREXi in the instant action." 1-ER-9.

As discussed *supra*, at 24–25, because this issue concerns the improper disqualification of Quinn Emanuel, it is not otherwise immediately appealable and cannot be remedied after trial. *Lewis C. Nelson & Sons, Inc.*, 188 F. App'x at 641–42. And this district court's ruling threatens to vastly expand the reach of disqualification motions. "Because of th[e] potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). If the Order stands, large enterprises with complex corporate structures—especially serial litigants like CoStar Group that regularly acquire competing companies—will be able to manufacture disqualifying conflicts across their many affiliates. The Court should address this important legal issue.

## CONCLUSION

For the foregoing reasons, the Court should issue a writ of mandamus vacating the district court's Order.

29

Respectfully submitted, this 31st day of July, 2026.

      *Ellyde R. Thompson*

Alex Spiro
Ellyde R. Thompson
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
212-849-7000
alexspiro@quinnemanuel.com
ellydethompson@quinnemanuel.com

Michael Lifrak
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, California 90017
213-443-3000
michaellifrak@quinnemanuel.com

*Counsel for Petitioner Commercial Real Estate Exchange, Inc.*

## CERTIFICATE OF COMPLIANCE

This petition complies with the requirements of Federal Rule of Appellate Procedure 21(d) and Circuit Rule 21-2 because, excluding accompanying documents and the parts of the petition exempted by Rule 32(f), it contains 7,062 words and is less than 30 pages in length. This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED: July 31, 2026

*Ellyde R. Thompson*
Ellyde R. Thompson

# CERTIFICATE OF SERVICE

I certify that on July 31, 2026, I caused this petition to be electronically filed with the Clerk of the Court using the CM/ECF system.  I further certify that on this day I caused a copy of this petition to be served via email and FedEx upon the district court and all counsel of record.


DATED: July 31, 2026

*Ellyde R. Thompson*
Ellyde R. Thompson

## STATEMENT OF RELATED CASES

There are no related cases under Circuit Rule 28.2-6.


DATED: July 31, 2026

*Ellyde R. Thompson*
Ellyde R. Thompson

33